# MITCHELL L. PASHKIN, ATTORNEY AT LAW

## DEBT COLLECTION DEFENSE     CONSUMER PROTECTION

## COURT ACTIONS, TRIALS AND APPEALS

Mitchell L. Pashkin, Esq., Principal

<u>Admitted</u>
Supreme Court of the United States
Eastern, Southern and Western Federal District of New York
New York State

T: (631) 629-7709
F: (631) 824-9328

mpash@verizon.net

<u>775 PARK AVENUE, STE. 255, HUNTINGTON, NY  11743</u>

Judge Kiyo A. Matsumoto
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Wai Hoe Liew , et. al. v Cohen & Slamowitz, et. al
      Civil Action, File No. 2:14-cv-04868-KAM-MDG
      Response to Defendants' Request To Make A Motion To Dismiss

October 20, 2014

Dear Judge Matsumoto:

I represent the plaintiff.

It is a waste of this court's resources to allow Defendants to move to dismiss based on the grounds set forth in their letter.

**STATUTE OF LIMITATIONS**

At the motion to dismiss stage of this case, Defendants' arguments for dismissal on statute of limitations grounds clearly would be barred by both the discovery rule and equitable estoppel.

The existence of the discovery rule under federal law in general is undisputed.  Defendants' letter does not discuss or explain how they would get around the discovery rule.

"A federal court generally employs the "discovery rule," under which "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."  Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007).  I am not aware of any case or section of the FDCPA which provides prohibits a court from applying the discovery rules in an FDCPA case.  Guilbert v. Gardner was cited as support by the court in this district in the FDCPA case of Fritz v. Resurgent Capital Servs., LP, Case No. 11-CV-3300 (FB) (VVP) (E.D.N.Y., 2013).).  The Second Circuit's discussion of the existence of the discovery rule in federal litigation is consistent with and often identical to the reasoning of the Ninth, Fifth and Fourth Circuit Court of Appeals in cases issued by them finding the discovery rule applicable in FDCPA cases.

At the motion to dismiss stage, the court in Coble v Cohen & Slamowitz, LLP, 824 F.Supp.2d 568 (S.D.N.Y., 2011) found that equitable tolling applied to the Coble plaintiffs' Complaint based upon the allegations regarding fraudulent Midlantic affidavits of service, Cohen & Slamowitz's alleged knowledge of the fraudulent Midlantic affidavits of service and Cohen & Slamowitz's concealment of the fraudulent Midlantic affidavits of service.  Defendants did not move for reconsideration of or appeal the Coble decision applying equitable tolling.  Defendants' letter does not attempt to explain why the court in Coble may have been mistaken in its ruling.  Defendants' letter does not argue that equitable tolling does not apply to this case.  These same allegations are present in this case.  This case also alleges concealment beyond and after the concealment alleged in Coble.  Plaintiffs allege concealment and fraud after Defendants decided not to challenge the Coble decision and after they agreed to settle the Coble class action.

Since Defendants' letter does not set forth an argument regarding the discovery rule or equitable estoppel, they should be prohibited from moving to dismiss on statute of limitations grounds.

**ALLEGED PERMISSIBLE ACTION**

Per their letter, Defendants' claim that the So Ordered settlement agreement in Coble amounts to Judge Ramos' approval of the conduct alleged in Plaintiffs' Complaint.  They specifically argue per paragraph 51 of the settlement agreement quoted in their letter that "all previous judgments and restraints *are expressly permitted to continue*".  No reasonable reading of paragraph 51 of the settlement agreement can support this interpretation.

It is true that paragraph 51 does not require the judgments to be vacated; but nothing in paragraph 51 states that they shall be allowed to continue.  The absence of an affirmative requirement to vacate or otherwise dispose of the judgments cannot be deemed a determination that the judgments are valid.

If this paragraph amounted to a determination that the judgments are valid, there would be no reason for the following portion of paragraph 51:

> "Defendants represent and warrant that they are not currently and will not in the future send collection letters with regard to judgments involving

> Midlantic affidavits of service, and that Defendants are not currently and will not in the future commence any new post judgment collection actions (e.g., wage garnishment, bank restraint, taking of liens, issuance of post-judgment discovery devices) with regard to judgments involving Midlantic affidavits of service."

In fact, the above quoted portion of paragraph 51 supports rather than defeats Plaintiffs' claims. There can be no reason why Defendants would be barred from enforcing these judgments themselves but would be allowed to let their client or subsequent debt collectors believe that they were allowed and in effect impliedly represent that they were allowed to enforce these judgments.

An additional portion of paragraph 51 reads as follows:

> The Parties agree that this representation and warranty will not apply to post-judgment collection efforts that are already in place with regard to a particular account (e.g. already commenced wage garnishment, liens that are already in place, etc.).

This above quoted portion of paragraph 51 also supports rather than defeats Plaintiffs' claims. It proves that the only action Defendants agreed they would take regarding these Midlantic judgments was the continuation of "post-judgment collection efforts that are already in place with regard to a particular account". The actions alleged in Plaintiffs' Complaint are not "post-judgment collection efforts that are already in place with regard to a particular account".

If nothing else, the differing interpretation and effect of paragraph 51 put forth by each side shows that a motion to dismiss cannot be based on paragraph 51.

There are two other reasons why a motion to dismiss cannot be based on paragraph 51. First, per the final portion of paragraph 51, the terms of paragraph 51 were based on negotiations between the parties rather than any finding by the court regarding the validity of the continuation of the judgments:

> "Class Counsel has found this representation and warranty to be acceptable, and it is to be treated as additional consideration to the Settlement Class and Settlement Subclass in exchange for their release."

Defendant's interpretation as to the effect of paragraph 51 actually directly contradicts the judge's actual finding in the decision denying the motion to dismiss:

> "Plaintiffs have sufficiently alleged that defendants were on notice that any default judgments based on the Midlantic affidavits were potentially fraudulent as of 2006. They have also plausibly alleged that by failing to investigate the fraudulent practices of its process service company and continuing to enforce those judgments, defendants violated the FDCPA

and concealed that violation in the process." Coble v Cohen & Slamowitz, LLP, 824 F.Supp.2d 568 (S.D.N.Y., 2011).

Second, as non-parties in the Coble case, Plaintiff cannot be bound by the settlement agreement or be prohibited from challenging similar actions by Defendants. Taylor v. Sturgell, 553 U.S. __, 128 S.Ct. 2161, 2166-67 (2008) (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940).

**CONSENT TO CHANGE ATTORNEY**

Defendants are that an FDCPA lawsuit cannot be based upon the execution and delivery of Consent to Change Attorney. They argue that this is not "collection activity" because it was not "designed to induce or obtain payment".

The FDCPA indisputably prohibits actions and omissions which amount to both "an attempt to collect a debt and which are "in connection with an attempt to collect a debt". Defendants' argument ignores the fact that the Complaint alleges that the execution and delivery of Consent to Change Attorney was "in connection with an attempt to collect a debt".

The case of Magrin v. Unifund CCR Partners, Inc., 2002 WL 31804268, 52 Fed.Appx. 938 (9th Cir. 2002), certiorari denied 538 U.S. 980 (2003) is similar to the violations alleged in the Sixth Seventh, Eighth and Tenth Cause of Action. In Magrin, the plaintiff sued both Unifund and The Credit Store. Magrin alleged that Unifund had gone to court to try to collect a debt from him. The case against him got dismissed; and afterward, Unifund sold the debt to The Credit Store without telling The Credit Store of the existence of the prior lawsuit or the results. The district court granted the defendants' motion to dismiss for failure to state a claim. The Ninth Circuit determined that Magrin did set forth a claim and reversed and remanded. The Ninth Circuit found as follows:

> "Thus, a consumer states a valid claim for relief under the Act when he alleges that a debt collector has made a false representation as to the legal status of a debt in connection with the sale, transfer or assignment of a debt to another debt collector with the knowledge that the purchaser, transferee or assignee intends to initiate or continue attempts to collect the debt".

The fact that Plaintiffs' case involves one debt collector signing and delivering a Consent To Change Attorney or having a client take back a file from a debt collector rather than a sale, transfer or assignment is a distinction without a difference. Both instances involve a second debt collector taking over the attempt to collect the debt from the first debt collector. Both instances involve the first debt collector knowing that another debt collector was going to take over attempting to collect the debt. Both instances involve the first debt collector not telling the second debt collector, directly or through their mutual client, about problems which occurred during the first attempt to collect the debt. Both instances involve these omissions resulting in actions by the second debt collector that never should have been taken.

As regards FDCPA liability for failing to take certain actions such as notifying your client or a second debt collector of a relevant fact effecting the legal right to continue to attempt to collect a debt, in Coble v Cohen & Slamowitz, LLP, 824 F.Supp.2d 568 (S.D.N.Y., 2011) the court held as follows in denying these same Defendants' motion to dismiss:

> "Plaintiffs have sufficiently alleged that defendants were on notice that any default judgments based on the Midlantic affidavits were potentially fraudulent as of 2006. They have also plausibly alleged that by failing to investigate the fraudulent practices of its process service company and continuing to enforce those judgments, defendants violated the FDCPA and concealed that violation in the process."

There is no difference between the omission in Coble of "failing to investigate the fraudulent practices of its process service company" and the omissions and actions alleged in the Sixth Seventh, Eighth and Tenth Cause of Action in this case of failing to notify their client or the second debt collector of the potential issues with the judgment. Both omissions resulted in the improper continuation of debt collection lawsuit and the improper enforcement of a judgment.

The violation of the FDCPA found in Currier v. First Resolution Inv. Corp., No. 13-5943 (6th Cir., 2014) as a result of a failure to eliminate an invalid judgment lien also supports the viability of a cause of action based on the signing and delivering a Consent To Change Attorney to a second debt collector knowing that it would continue the debt collection attempts and concealing information that would have informed the second debt collector and/or their client of a problem with the second dent collector attempting to collect the debt.

The FDCPA itself of course does not define "in connection with the collection of any debt" or even "in connection with".  However, in Empire HealthChoice Assur., Inc. v McVeigh, 396 F.3d 136, 157 (2d Cir. 2005), the Second Circuit held that "in connect with" is synonymous with the phrases "related to", "associated with", and "with respect to".  Empire HealthChoice Assur., Inc. v McVeigh, 396 F.3d 136, 157 (2d Cir. 2005) was affirmed by the United States Supreme Court at 126 S. Ct. 2121 (2006), 126 S.Ct. 2121, 165 L.Ed 2d 131, 547 US 677 (2006).  In 2013, another court in this district also discussed the meaning of the phrase "in connection with".  In Headley-Ombler v. Holder (E.D.N.Y., 2013), 12-CV-2631 (WFK) (LB), the court explained the following in discussing the meaning of in connection with in Section 1503(a) of Title 8:

> "Section 1503(a) does not define the phrases "arose," "by reason of," or "in connection with." Where there is no statutory definition of a term, the Court must "give it its ordinary meaning." (citation omitted). …To "arise" is defined as "to come into being," "to come about," "to become apparent in such a way as to demand attention," "to come into being or notice." (citations omitted).  The phrase "in connection with," by contrast, has a broader meaning and does not imply a causal connection. *Empire HealthChoice Assur. Inc. v. McVeigh,* 396 F.3d 136, 157 (2d Cir. 2005); *see also United States v. honey,* 219 F.3d 281, 284 (3d Cir. 2000)

>   ("in connection with" denotes a "wide range of relationships"); *United States v. Wyatt,* 102 F.3d 241, 247 (7th Cir. 1996) ("the meaning of the phrase 'in connection with' should be construed expansively"); *United States v. Thompson,* 32 F.3d 1, 7 (1st Cir. 1994) ("[T]he phrase 'in connection with' should be interpreted broadly . . . .")."

1692f is one of the sections Plaintiffs allege that Defendants have violated.  Back in 2010, the United States Supreme Court made clear the extremely wide scope of the FDCPA.  It held in Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 587, 130 S. Ct. 1605, 1615 (2010) that the FDCPA is a consumer protection statute that "imposes open-ended prohibitions on, inter alia, false, deceptive, or unfair debt-collection practices."  In July of this year, the 11th Circuit reiterated its opinion regarding the meaning of unfair and unconscionable as set forth in 1692f:

> "The plain meaning of 'unfair' is 'marked by injustice, partiality, or deception. … Further, "an act or practice is deceptive or unfair if it has the tendency or capacity to deceive. … We also explained that the term 'unconscionable' means 'having no conscience'; 'unscrupulous'; 'showing no regard for conscience'; 'affronting the sense of justice, decency, or reasonableness."  Crawford v. LVNV Funding, LLC, No. 13-12389 (11th Cir., July 10, 2014).

It certainly is unfair, unjust, unconscionable, unscrupulous, indecent and unreasonable for one debt collector to sign a Consent To Change Attorney and deliver it to a second debt collector without revealing the facts regarding the collection action when the first debt collector knows or should have know that there is an issue that would result in a violation of the FDCPA upon the second debt collector attempting to collect the debt.  The FDCPA's purpose easily could be thwarted if it were not interpreted to hold a debt collector liable for creating a situation where a subsequent debt collector or its client attempts to collect a debt in violation of the FDCPA.  While the second debt collector should have their own obligations under the FDCPA upon receipt of a file, to fulfill the purpose of the FDCPA, the first debt collector also must have obligations to convey to the second debt collector all relevant information concerning the file.

Since Defendants have not raised a basis for the dismissal of the causes of action actually alleged in the Complaint in this action, this court should not grant a pre-motion conference or allow Defendants to proceed with a motion to dismiss.

**ATWOOD'S PRIOR ACTION**

This action and Atwood's prior action cover different acts and periods of time.

Atwood's prior action specifically is based on an April 22, 2013 telephone call and various actions and inactions by Defendants this past February.

Per paragraphs 55 and 57 of the Complaint in this action cover actions and inactions occurring between 12/17/06 and 2/27/08 and then again on June 10, 2010.

Any reference in the Complaint in this action to events referenced in the prior action was not meant to make these events a part of the causes of action in this action. Plaintiffs will seek to amend the Complaint in this action to more clearly differentiate the two actions.

**IRRELEVANCE OF KYANI AND ATWOOD OPTING OUT OF THE <u>COBLE</u> CLASS**

Defendants argue against Kyani and Atwood being a part of the proposed class based on this action being based on the same set of facts as the facts in <u>Coble</u>. This amounts to a misreading or ignorance of many of the facts and allegations in the Complaint in this action. It is clear from a reading of the Complaint in this action that this action is based mostly on what Defendants did and did not know after it was served with the <u>Coble</u> Class Action, after the denial of the motion to dismiss in <u>Coble</u>, after it decided not to appeal the denial of the motion to dismiss in <u>Coble</u>, and/or after it decided to attempt to settle rather than continue to contest liability in <u>Coble</u>. Neither Kyani nor Atwood would be a named Plaintiff in this proposed class action if Defendants' had taken the appropriate actions after all of the above occurred in <u>Coble</u>. This includes but is not limited to violating the spirit, if not the letter, of the <u>Coble</u> settlement agreement by letting their clients or subsequent debt collectors believe that they were allowed and in effect impliedly represented that they were allowed to enforce these judgments.

Sincerely,

*Mitchell L. Pashkin*

Mitchell L. Pashkin, Esq.