# MITCHELL L. PASHKIN, ATTORNEY AT LAW

## DEBT COLLECTION DEFENSE     CONSUMER PROTECTION

## COURT ACTIONS, TRIALS AND APPEALS

Mitchell L. Pashkin, Esq., Principal

<u>Admitted</u>
Supreme Court of the United States
Eastern, Southern and Western Federal District of New York
New York State

T: (631) 629-7709
F: (631) 824-9328

mpash@verizon.net

<u>775 PARK AVENUE, STE. 255, HUNTINGTON, NY  11743</u>

Judge Kiyo A. Matsumoto
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    Wai Hoe Liew , et. al. v Cohen & Slamowitz, et. al
       Civil Action, File No. 2:14-cv-04868-KAM-MDG
       Response to Defendants' Letter Regarding Non-Consent

November 11, 2014

Dear Judge Matsumoto:

I represent Plaintiffs.

As set forth in the Minute Entry for proceedings held before you during the Pre Motion Conference on 10/28/2014 you ordered that "To the extent plaintiffs consent to Mr. Pashkin's representation, plaintiffs shall file declarations expressing their consent by November 12, 2014."  I assume that this directive stemmed from the fact that as set forth at the end of this letter a person's right to freely choose counsel weighs heavily against disqualification and that Courts in this Circuit show "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice" and "disqualification motions are often interposed for tactical reasons [a]nd even when made in the best of faith . . . inevitably cause delay." <u>Bd. of Ed. v. Nyquist</u>, 590 F.2d 1241, 1246 (2d Cir. 1979).  I have complied with this order via the consents from all three plaintiffs filed with this court.

Since Cohen & Slamowitz is not a "plaintiff" in this case, your 10/28/14 Order did not require me to obtain their consent. Despite this, Defendants' counsel's letter claims that you ordered me to obtain consents from my "clients" and claims that I was their client in the Coble case based on vague and unsubstantiated allegations.

Below, as a result of Defendants' allegations, I have set forth in minute detail my entire involvement regarding Coble while employed by Defendants. I did not feel it warranted or necessary to put this type of detail into the Plaintiffs affidavits of consent.

Notwithstanding, some of the statements in Defendants' counsel's letter are false and some are misleading. I did my research prior to taking on this matter; and based on my research I was fully confident that neither the ethics rules nor the case law regarding disqualification prevented me from representing Plaintiffs. Since receiving Defendants' counsel's letter I have done additional research. This additional research has confirmed and strengthened my opinion. Based on the actual facts and my reading of the cases and various ethics opinions, I never was Defendants' attorney in the Coble case, did not represent them in the Coble case, and my actions regarding Coble undertaken while a full-time employee of Defendants do not warrant my disqualification from this case.

If after reading this letter this court feels there is a question about my right to continue as Plaintiffs' counsel, I ask this court to require Defendants to make a motion with cases supporting their claim for my disqualification since parties moving for disqualification bear a "heavy burden" and must satisfy a "high standard of proof." Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C., 440 F. Supp. 2d 303, 308-09 (S.D.N.Y. 2006). Also, while Defendants have cited ABA opinions, courts in this district have held as follows:

> "Although "decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* (citations omitted). The "only truly binding authority on disqualification issues" is the Second Circuit." Skidmore v. Warburg Dillon Read LLC, No. 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001).

Moreover, the Second Circuit has repeatedly indicated that these rules "are not to be rigidly applied to force attorney disqualification." Leber Assocs., LLC v. Entm't Group Fund, Inc., No. 00 Civ. 3759 (LTS) (MHD), 2001 U.S. Dist. LEXIS 20352, at *5 (S.D.N.Y. Dec. 7, 2001).

In fact, in the below mentioned October 13, 2014 letter from Thomas Leghorn, he cited the case of Government of India v. Cook Industries, Inc., 569 F.2d 737 (C.A.2 (N.Y.), 1978) and stated that since the case at bar relates to the Coble case I am disqualified. In response to this letter I pointed out that "I just read the Second Circuit decision you cited. As I expected, it is readily distinguishable if not completely inapplicable."

Thomas Leghorn ignored the second prong of the two part test in Government of India v. Cook Industries, Inc.-"Having determined that the district court correctly held that the issues in the prior and present cases were substantially related, we turn to the remaining question whether Meeker's involvement in the prior case was such that he would have had access to relevant privileged information." Government of India v. Cook Industries, Inc., 569 F.2d 737, 740 (C.A.2 (N.Y.), 1978). In Government of India v. Cook Industries, Inc., the Second Circuit adopted the district court's findings regarding the attorney's involvement in the prior case:

> "During the three years of Meeker's association with Hill, Rivkins, the firm billed Cook for more than one hundred hours of Meeker's services. Among other services, Meeker prepared answers to the complaints against Cook, a motion for a stay pending arbitration, a request for admissions, a motion for summary judgment and various memoranda in support of these motions. He interviewed a witness with regard to the weight certificates. He attended several pretrial conferences and one settlement conference. Throughout this period he maintained close contact with Cook's general counsel." Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (C.A.2 (N.Y.), 1978).

I ask this court to notice the omission of any reference to Government of India v. Cook Industries, Inc., 569 F.2d 737 (C.A.2 (N.Y.), 1978) in Defendants' non-consent letter to this court as well as the lack of any case law showing that my involvement with Coble warrants a finding that I was their attorney in Coble or otherwise involved to an extent requiring my disqualification.

**CLAIMED "PARTICIPATION IN CONFERENCE CALLS WITH MR. LEGHORN REGARDING THE *COBLE* SETTLEMENT"**

I am not sure to what conference calls Defendant's counsel is referring. This is a vague statement. On October 13, 2014, Thomas Leghorn of Defendants' attorneys emailed me a letter demanding that I withdraw in part because "at the October 19, 2012 mediation held in the *Cobble* matter, you appeared as the General Counsel for C&S, Mitchell Slamowitz and David Cohen." This is not true. On October 19, 2012, I still was the Assistant Managing Attorney and Leandre John was the Managing Attorney. At this point, I had absolutely no involvement in any FDCPA litigation at Cohen & Slamowitz. Leandre John handled all FDCPA matters for Cohen & Slamowitz not handled by outside counsel; and he handled everything needed to assist outside counsel. He was the sole representative of the firm on all FDCPA matters. It would have been he who participated in this call.

I never was on a call as part of any mediation. I was nothing more than the contact person/conduit for Cohen & Slamowitz and in particular Defendant David A. Cohen. On more than one occasion in response to my question to David A. Cohen about participating in these calls, he specifically told me that he did not need me to be a part of the calls.

Attached to the aforementioned October 13, 2014 letter was a service list prepared by JAMS from August 13, 2014 listing my name. First, Defendants had terminated my employment almost eight months before this date. Second, the only reason my name would be on that list was because I was acting as a "secretary" for David A. Cohen to let him know when the mediation sessions were going to take place and to let the mediator know if and when David A. Cohen was available. I played absolutely no part in the mediation. I could not provide any details as to the purpose or content of the mediation sessions. As far as I know, it was Thomas Leghorn, Esq. and David A. Cohen who handled the mediation.

**REVIEWING DRAFTS OF THE SETTLEMENT AGREEMENT**

At the time I reviewed the settlement agreement, I was the Managing Attorney. As the Managing Attorney and prior to that as the Assistant Managing Attorney I was in charge of all litigation concerning debt collection cases in state courts. This included responding or overseeing the responses to motions to vacate judgments and dismiss cases. This was the only context in which I reviewed the settlement agreement. David A. Cohen asked me to review the settlement agreement to see how it would affect or determine how we responded to motions to vacate judgments and dismiss cases involving lawsuits served by Midlantic process server which we received going forward. As I remember, there only were one or two small paragraphs which had any bearing on this issue. I did give David A. Cohen and Thomas Leghorn my opinion on these paragraphs including giving my opinion during a conference call with David A. Cohen and Thomas Leghorn about this issue and the broader issue of how we would respond to motions to vacate judgments and dismiss cases involving lawsuits served by Midlantic process server which we received going forward.

I was not involved in communicating with Coble's counsel in getting changes to these paragraphs. As shown by the docket in the Coble case, the settlement agreement was finalized and submitted to the court well after Defendants had terminated my employment.

**COMPILING CLASS LISTS**

My involvement in "compiling" class lists was limited to acting as a messenger and go between among David A. Cohen, Edward Wilkinson, Manager of Defendants' IT Department, and Thomas Leghorn. David A. Cohen asked Edward Wilkinson to run a search based on the scope of the class as set forth in the draft of the settlement agreement and asked me to make sure that Edward Wilkinson timely got me the information (In many instances having nothing to do with any FDCPA case, David A. Cohen or others would task me with obtaining information from the IT Dept. and conveying it to them.). I then conveyed it to Thomas Leghorn and made sure that it was the information he needed. This information also consisted of only 2 different numbers representing the two different classes. There was no list of consumer names, index numbers, file numbers, etc. I also was present at one meeting between Defendant Mitchell Selip and Edward Wilkinson to determine how Edward Wilkinson would structure the search terms. I did not review any of the files identified by the search, was not involved in determining the scope of the class as set forth in the settlement agreement, and was not involved in any communications with Coble's counsel

regarding the class lists. I know nothing more about the class than is set forth in the filed Settlement Agreement.

Again, the settlement agreement was finalized and submitted to the court well after Defendants had terminated my employment. I have no idea when the number was finalized or what if any changes were made to the number after I left. The size of each class is not confidential since it is set forth in the Settlement Agreement available on PACER. Finkel v. Frattarelli Bros., Inc., 740 F.Supp.2d 368 (E.D.N.Y., 2010).

These class lists also have no relevance to this case. The Complaint does not allege that Defendants representation as to the size of the classes is fraudulent. The key fact and question in this case involves Defendants transferring files to new debt collectors without telling them or their client about the potential issue related to the Midlantic affidavits of service. The files of two of the plaintiffs were transferred after I no longer was employed by Defendants. Kyani's file was transferred on 6/21/14 and Atwood's on 1/31/14. It is not possible for me to have any knowledge about the transfer of these files. If the class in this case is certified, the number in the class and who is in the class can be determined through new and distinct searches, i.e. (1) which files Defendants have transferred to other debt collectors where Midlantic was the process server and (2) which lawsuits were served between July 25, 2000 and December 29, 2002 where Midlantic was the process server.

**ACCESS TO MATERIAL INFORMATION**

Defendants claim that I have "access to material information". First, there is a difference between "material" information and "confidential" information. An attorney's possession of "confidential" information about a former client could require disqualification; but I know of no case or basis for disqualification based on possession of "material" information. If Defendants believed that I had confidential information they certainly would have used the word "confidential" rather than "material". Second, since Defendants have not identified this alleged "material" information other than the previously addressed class lists and settlement agreements, I have no ability to respond to these allegations.

I can state and would submit an affirmation or affidavit that I have no confidential information. HLP Properties v Consolidated, 1:14-cv-01383-LGS Document 115 Filed 10/16/14; Univ. of Rochester v. *G.D. Searle & Co.,* Inc., No. 00-CV-6161, 2000 WL 1922271 (W.D.N.Y. Dec. 11, 2000) at *7-8 (law firm satisfied burden to demonstrate that there was no actual or apparent conflict in loyalties or diminution in the vigor of its representation where attorneys submitted sworn declarations asserting that they had obtained no confidential information as a result of their allegedly concurrent representations); Team Obsolete Ltd. v. A.H.R.M.A. Ltd., No. 01 Civ. 1574, 2006 WL 2013471, at *8 (E.D.N.Y. July 18, 2006) (same).

There is no information which I possess which is not available from the court documents on PACER. All of the information set forth in the Complaint is taken from my review of the docket in Coble and various documents filed in the Coble case along with my independent representation of the three plaintiffs. I first learned about the Coble case from an article in

the New York Law Journal about the court's denial of Defendants' motion to dismiss the Coble case. After Defendants terminated me and I re-started my own practice and began focusing on defending consumers in collection cases, my co-counsel Jesse Langel started to refer me overflow work and work for various reasons he could not or did not want to handle. It was a coincidence that he referred me the cases of the three plaintiffs. Upon seeing the affidavit of service in Mr. Liew's case and the Consent to Change Attorney executed by Defendants and given to a new debt collection law firm, I started to review the docket in Coble and various documents filed in the Coble case. I later bgean to represent the other Plaintiff's in defense of collection actions and realized the potential scope of the problem. I also did a tremendous amount of research to ascertain whether or not there were FDCPA violations.

In Finkel v. Frattarelli Bros., Inc., 740 F.Supp.2d 368 (E.D.N.Y., 2010), Judge Bianco found that the information while relevant to the case was not confidential:

"Furthermore, to the extent that defendants are arguing that Cohen Weiss is conflicted because of a desire to conceal the negative findings in Machado's report, the Court agrees with plaintiffs that this argument is unpersuasive. The Machado report is publicly available both on ECF and via the New York Times website,[7] and thus "[a]ny incentive to conduct the trial of this case in a manner that serves counsels' interests at plaintiffs' expense is ... diminished." *Hogan v. Higgins,* No. 04-cv-3298 (JFB), 2008 WL 3200252, at *4 (E.D.N.Y. Aug. 5, 2008) (denying disqualification motion where letter that could subject counsel to sanctions had already been filed as exhibit to publicly filed documents and had been the subject of arguments heard in open court)."

In the case at bar, any information I possess is publicly available. This fact along with the extremely limited scope of my involvement in Coble and as explained below my not being Defendants' attorney in Coble, warrant this court finding no basis to disqualify me based on Defendants not being able to meet their heavy burden of showing I possess confidential information.

**REPRESENTATION OF DEFENDANTS IN COBLE**

Defendants claim that they were a client of mine regarding Coble. This is a completely false statement both factually and legally for the following reasons:

1. A review of the docket in the Coble case shows that I am not listed as the attorney for any of the defendants in Coble;
2. I began my employment with Defendants on 6/13/11. This Coble case was filed on 2/15/11.
3. Leandre John filed a Notice of Appearance on 5/20/11;
4. Thomas Leghorn then filed a Notice of Appearance on 6/7/11; and Joseph Francoeur later filed a Notice of Appearance on 7/19/13;
5. Leandre John, the former Managing Attorney of Defendants, is listed on the docket as representing the defendants in Coble. Coble continued long after Leandre John no longer was with Defendants; and I was not substituted in for Leandre John;

6. Every document filed with the court on behalf of Defendants was filed by Thomas Leghorn or Joseph Francoeur.  I am not listed on the docket as an attorney for Defendants and never filed anything with the court on their behalf;
7. I never authored any part of a legal document or represented Defendants at any court appearance, deposition, motion, conference or any other event in the Coble case;
8. I never was offered or received any extra compensation in relation to the Coble case;
9. There was never proposed or executed any retainer agreement between Defendants and myself in relation to the Coble case;
10. I believe that Thomas Leghorn and his firm were retained by the insurance carrier providing coverage to Defendants in the Coble case and I never have been approved by any insurance carrier to defend an FDCPA defendant; and
11. Defendants considered only Thomas Leghorn to be their attorney in the Coble case and never even would have considered allowing me to represent them in the Coble case.  This is evidenced by the following facts:

    a. While I was employed at Defendants, David A. Cohen repeatedly told me that I did not have enough experience to represent them in FDCPA cases;
    b. Eventually somewhere in the middle of 2013, Defendants allowed me to defend them on 2 or 3 small and fairly frivolous FDCPA cases that had no implications beyond the case itself.  Most of them were so baseless or frivolous that I was able to secure a voluntary agreement to dismiss after one court appearance or prior to interposing an answer;
    c. During and after the time they let me defend these small FDCPA cases, several other FDCPA lawsuits were brought against them.  These lawsuits all involved the legality of their general overall practices such as the lack of a 1099-c notice in a settlement letter, the use of allegedly fraudulent statements from Discover Bank and a class action alleging the filing of lawsuits in improper venues.  Each time these lawsuits came around I pleaded with David A. Cohen to allow me to handle the defense of these lawsuits; but each time he refused telling me that I did not have enough experience and told me that they were going to have one of the normal FDCPA defense attorneys handle the case;
    d. At the time Defendants terminated me as an employee, David A. Cohen and Mitchell G. Slamowitz told me that while they no longer could have me as an employee that they would be able to give me more than enough per diem work handling regular collection cases to keep me busy (They gave me one case on behalf of Discover Bank a week after they fired me and then never assigned me any other cases.).  At the same time, I asked about handling their FDCPA defense work as outside counsel.  David A. Cohen said he would have to think about that; but during a telephone call a few weeks later with the two of them, he said that he did not think I knew enough for them to allow me to handle the FDCPA work;
    e. I currently am representing a plaintiff in a proposed class action against Defendants in the case of Mark Sam v Cohen & Slamowitz, LLP, et. al, 1:14-cv-00611-JTC.  Defendants have opposed Mark Sam's class certification motion in part based on my lack of qualifications to represent a class.  In their opposition to the class certification, Joseph Francoeur wrote as follows: "Defendants herein are well-aware that counsel, Mitchell Pashkin, is inexperienced as class counsel as Mr.

- Pashkin worked as an employee for the defendants for three years until January, 2014, at which time C&S terminated his employment."; and
- f. The above shows that Defendants never would have let me represent them in a class action action case such as Coble which involved allegations of fraudulent service of process for a period of several years involving as it turns out of 50,000 consumers. It is not reasonable for Defendants to have believed that I represented them or to even allege that I did.

Based on the test set out by the court's for determining the existence of an attorney-client relationship in the context of disqualification motions, I was not Defendants' attorney in Coble. See HLP Properties v Consolidated, 1:14-cv-01383-LGS Document 115 Filed 10/16/14; Merck Eprova AG v. ProThera, Inc., 670 F.Supp. 2d 201, 210 (S.D.N.Y. 2009) (citing six-factor test for determining existence of attorney client relationship); and Medical Diagnostic Imaging, 542 F.Supp.2d at 307 (quoting *First Hawaiian Bank v. Russell & Volkening, Inc.,* 861 F.Supp. 233, 238 (S.D.N.Y.1994).

**TACTICAL ADVANTAGE**

Defendants have not identified or even claimed that I possess confidential information. They claim that I have material information but are vague about the extent or nature of this alleged material information. Rather than request permission to file a motion to disqualify me, they sought to make a pre-answer motion to dismiss. The basis of the motion they asked permission to make did not include my disqualification. This issue was raised as a secondary matter in an apparent attempt to ensure they did not waive this right if they lost the motion to dismiss.

The intended grounds for the motion to dismiss have no relationship to any of the "material" information that I allegedly possess or my alleged prior representation of them. Defendants believe that the case at bar is prohibited due to the statute of limitations, res judicata, FRCP 23 and the So Ordered settlement agreement in Coble.

I am representing a plaintiff in three other FDCPA cases against Defendants. In two of the cases, they have filed a motion to dismiss and have not raised any disqualification issue despite the fact that they have informed both courts that there may be a disqualification issue which they may raise at a later date. Their time to answer or move in third case has not expired.

It appears that Defendants are raising the issue of my disqualification as a tactical measure. If they really believed that I represented them in Coble or that I possessed confidential information, they would have sought my disqualification through a formal motion. Universal City Studios, Inc. v. Reimerdes, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000).

> "In deciding whether to disqualify an attorney, a district court must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 209 (2d Cir. 2010)

(internal quotation marks and citation omitted). Courts in this Circuit show "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice" and "disqualification motions are often interposed for tactical reasons [a]nd even when made in the best of faith . . . inevitably cause delay." Bd. of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (citation omitted).  Accordingly, "unless an attorney's conduct tends to 'taint the underlying trial,' . . . courts should be hesitant to disqualify an attorney." *Id.* As the Second Circuit has explained, "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764-65 (2d Cir. 1990) (citation and alterations omitted).

This court should find a lack of disqualification, require Defendants' to make a formal motion or at the very least put off any disqualification determination after deciding on Defendants' motion to dismiss in order to avoid delays and allow Plaintiffs to use the counsel of their choice to address the legal issues raised in Defendants' request to move to dismiss. See Solomon v. Siemens Indus., Inc. 11-CV-1321 (DLI-SMG) (E.D.N.Y., 2013).

Sincerely,
*Mitchell L. Pashkin*
Mitchell L. Pashkin, Esq.