UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

WAI HOE LIEW a/k/a MICHAEL W. LIEW,
KHURRAM KAYANI, and
ELIZABETH K. ATWOOD a/k/a ELIZABETH
KING

                     Plaintiffs,

   -against-

COHEN & SLAMOWITZ, LLP,
MITCHELL SELIP, MITCHELL G. SLAMOWITZ,
and DAVID A. COHEN

                Defendants.

--------------------------------------X

**MEMORANDUM AND ORDER**

14-CV-4868 (KAM)(MDG)

**MATSUMOTO, United States District Judge:**

       On August 15, 2014, Wai Hoe Liew a/k/a Michael W. Liew ("Mr. Liew"), Khurram Kayani ("Mr. Kayani") and Elizabeth Atwood a/k/a Elizabeth King ("Ms. Atwood") (collectively, "plaintiffs") commenced this class action against Cohen & Slamowitz, LLP ("C&S"), and attorneys of that firm Mitchell Selip ("Mr. Selip"), Mitchell G. Slamowitz ("Mr. Slamowitz") and David A. Cohen ("Mr. Cohen") (collectively, "defendants"), alleging violations under the Fair Debt Collection Practices Act ("FDCPA") and New York state law.  (Complaint ("Compl."), ECF No. 1.)  Presently before the court is defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons

stated herein, defendants' Motion to Dismiss is granted in part and denied in part.

BACKGROUND

**A. The Present Litigation**

Plaintiffs bring a putative class action alleging that defendants engaged in fraudulent practices in the collection and attempted collection of debts allegedly incurred by plaintiffs for personal, family and household purposes in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692d, 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(5), 15 U.S.C. 1692f, 15 U.S.C. 1692f(1), General Business Law ("GBL") 349, and New York Judiciary Law § 487. Each plaintiff was sued in state court by different creditors that were represented by C&S in efforts to collect the debts. (*See* Compl., ECF No. 1.) Plaintiffs allege that C&S used Midlantic Process, Inc. ("Midlantic") to serve process in the state court lawsuits, obtained default judgments, and continued attempting to collect the debt after C&S became aware of Midlantic's false and fraudulent "sewer service" practices in October 2006. (*Id.*) C&S was terminated by its creditor clients in each of the plaintiffs' debt collection lawsuits, and representation was subsequently transferred to other law firms that replaced C&S as counsel, and the new law firms continued attempts to collect plaintiffs' debts. (*Id.* at ¶ 165.) Plaintiffs allege that C&S failed to

notify the new law firms, their clients, the courts and the consumer debtors that the judgments they were attempting to enforce were potentially invalid due to Midlantic's false and fraudulent service practices.  (*Id.* at ¶¶ 113-18.)

### B. The *Coble* Litigation

In February 2011, Elizabeth Coble and others filed a class action complaint against C&S, Mr. Cohen, Mr. Slamowitz and other employees of C&S in the United States District Court for the Southern District of New York.  *See Coble v. Cohen & Slamowitz, et al.*, No. 11-cv-1037 ("*Coble* Class Action"). (Compl., ECF No. 1 at ¶ 26.)  As in the instant action, *Coble* plaintiffs alleged, *inter alia*, that C&S continued to enforce state court judgments it had obtained against plaintiffs even after C&S became aware as of 2006 that its process server, Midlantic, was falsifying affidavits of service.[1] (*Id.* at ¶ 27.) Midlantic engaged in so-called sewer service of the state court complaints that included making no attempts at personal service before serving process by the "nail & mail" method, making false

---

[1] The allegations in the *Coble* Class Action were in large part based on the affidavit of Kenneth Vega ("Vega Affidavit"), a former process server at Midlantic, produced in a suit styled *Caprino et al. v. Cohen & Slamowitz, LLP et al.,* No. 05-Civ-04814 ("*Caprino* Suit") in the Eastern District of New York.  Mr. Vega attested that Midlantic had falsified thousands of affidavits of service between 1995 and 2006 as a result of a company-wide policy, which was applied to all affidavits of service submitted on behalf of C&S. Midlantic's practices were implemented to maintain C&S's business.  (Compl., ECF No. 1 at ¶ 27.)

3

references to neighbors, and forgery and false notarization of the process server's signature. (*Id.*)

The *Coble* court denied the defendants' motion to dismiss and ruled that the *Coble* plaintiffs sufficiently alleged that the defendants were on notice as of 2006 that any default judgments based on Midlantic's affidavits of service were potentially fraudulent. (*Id.* at ¶ 28.) In denying the motion to dismiss, the *Coble* court also ruled that the plaintiffs plausibly alleged that the *Coble* defendants, including C&S, violated the FDCPA by failing to investigate Midlantic's fraudulent practices and continuing collection efforts to enforce the judgments, thereby concealing the issues relating to Midlantic's false and fraudulent service practices. (*Id.*) On October 9, 2014, the court approved the final settlement agreement in *Coble* action. (*Id.* at ¶ 31.)

The *Coble* "Settlement Class" was defined as:

> "Settlement Class" means all persons who have been sued in one or more consumer collection actions commenced in New York State between December 30, 2002 and the present in which C&S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic. Defendants represent that there are approximately 47,095 members of the Settlement Class.

(*Coble* Class Settlement Agreement, Exhibit ("Ex.") D to Affirmation of Joseph Francoeur In Support Of Defendants' Motion

to Dismiss ("Francoeur Aff."), ECF No. 48-4, at ¶ 21.)  The *Coble* settlement class also included a subclass of all class members who made involuntary payments after October 30, 2006, following a judgment entered, on any date before or after October 30, 2006, in a consumer collection action commenced in New York State where C&S represented the state court plaintiff, and the affidavit of service was signed and/or notarized by Midlantic.  (*Id.* at ¶ 22.)

**C. Plaintiff Wai Hoe Liew a/k/a Michael W. Liew**

The Complaint in the instant action alleges that plaintiff Michael Liew's debt arose out of a transaction used primarily for personal, family or household purposes ("Liew Debt"), and is therefore a debt under 15 U.S.C. § 1692a of the FDCPA.  (Compl., ECF No. 1 at ¶ 32.)  On or before July 25, 2000, C&S, on behalf of North American Capital Corp. ("NAC"), brought an action to collect the Liew Debt against Mr. Liew in the Civil Court of the City of New York ("Liew State Action"), and hired Midlantic to serve the lawsuit on Mr. Liew.  (*Id.* at ¶ 33-34.) Midlantic's affidavit of service for Mr. Liew lists an address at which Mr. Liew alleges his parents lived, but he alleges that his parents moved to that address after he ceased living with them and that he was living in Brooklyn at the time of service. (*Id.* at ¶ 35-36.)  On December 18, 2000, the Civil Court entered a default judgment against Mr. Liew, based on an application by C&S.  (*Id.* at ¶ 37.)

In October 2006, C&S learned of Midlantic's false and fraudulent service practices through an affidavit by a former Midlantic process server Kenneth Vega in *Caprino, et al. v. Cohen & Slamowitz*, *et al.*, No. 2:05-cv-4814 (E.D.N.Y.) action ("Vega Affidavit"). (*Id.* at ¶¶ 27, 39.). After October 2006, when C&S learned of issues with Midlantic's false and fraudulent service practices, C&S allegedly continued its efforts, on NAC's behalf, to collect on the debt for which judgment was entered in the Liew State Action by, *inter alia*, sending out yearly letters "informing Liew that there was a judgment against him" and informing him of his right to claim exemptions of assets from restraint, sending out bank restraints "on at least a yearly basis," engaging in searches regarding Mr. Liew's employment and most recent address, and attempting to reach him by phone using automatic and manual dialing. (*Id.* at ¶ 38.)

On or before June 21, 2012, NAC terminated C&S's representation in the Liew State Action and retained Eltman, Eltman & Cooper ("EEC") to collect Mr. Liew's debt. (*Id.* at ¶ 40.) On or about June 21, 2012, Mr. Cohen, on C&S's behalf, signed and sent a Consent to Change Attorney form to EEC, agreeing that EEC shall take C&S's place as NAC's attorney in the Liew State Action. (*Id.* at ¶¶ 41-42.) Plaintiffs allege that C&S knew or should have known that EEC, on behalf of NAC, intended to attempt to collect the Liew Debt. (*Id.* at ¶ 43.) Plaintiffs

allege that at no time after the Consent to Change Attorney form was executed did C&S inform the state court, EEC, or NAC that there may be an issue with the validity of the Liew Judgment and the continued right of anyone to continue debt collection efforts in regards to the Liew Debt.  (*Id.* at ¶ 47.)

On April 3, 2014, Mr. Liew learned that his bank accounts at Citibank were restrained because of a restraining notice issued by EEC on behalf of NAC, to collect the Liew Debt. (*Id.* at ¶ 48.)   Mr. Liew alleges that he had not been served with the Liew State Action and he had no prior knowledge of the Liew State Action and judgment entered therein, until his accounts were restrained.  On April 3, 2014, Mr. Liew filed an Order to Show Cause in the Liew State Action seeking to vacate the judgment and dismiss the case.  (*Id.*)  On May 8, 2014, EEC signed a stipulation agreeing to vacate the state court judgment and dismiss the action with prejudice.  (*Id.* at ¶ 49.)

Mr. Liew also alleges that the statute of limitations to commence the instant action is equitably tolled, for the same reasons found by the court in the *Coble* Class Action, as to any acts or omissions by C&S which occurred prior to one year before the filing of this action.  (*Id.* at ¶ 50.)

**D. Plaintiff Khurram Kayani**

Prior to February 24, 2003, plaintiff Khurram Kayani allegedly incurred a debt ("Kayani Debt"), as defined under 15

U.S.C. § 1692a of the FDCPA. (Compl., ECF No. 1 at ¶¶ 8, 78.) On or before February 24, 2003, C&S, on behalf of Platinum Financial Services ("PFS"), filed an action to collect a debt against Mr. Kayani, in Civil Court of the City of New York ("Kayani State Action"), and hired Midlantic to serve the lawsuit on Mr. Kayani. (*Id.* at ¶ 79.) Midlantic's February 10, 2003 affidavit of service for Mr. Kayani listed a service address where he did not live at the time. (*Id.* at ¶ 80-81.) On July 9, 2003, the Civil Court entered a default judgment against Mr. Kayani, based on an application by C&S. (*Id.* at ¶ 82.)

In October 2006, C&S learned of Midlantic's fraudulent service practices through the Vega Affidavit in *Caprino* action. (*Id.* at ¶¶ 27, 84.) After October 2006, C&S continued its efforts, on NAC's behalf, to collect on the debt for which judgment was entered in the Kayani State Action by, *inter alia*, "sending out yearly letters informing [Mr.] Kayani that there was a judgment against him," "sending out bank restraints on at least a yearly basis," and the other collection and enforcement activities and methods as described for plaintiff Liew. (*Id.* at ¶ 83.)

On or before June 21, 2014, PFS terminated C&S's legal representation in the Kayani State Action and retained EEC to collect the Kayani Debt. (*Id.* at ¶ 85.) On or about June 21, 2012, C&S signed and sent a Consent to Change Attorney form to

EEC, agreeing that EEC shall by substituted for C&S as PFS's attorney in the Kayani State Action. (*Id.* at ¶ 86.) Mr. Kayani alleges that C&S knew or should have known that EEC, on behalf of PFS, intended to attempt to collect the Kayani Debt. (*Id.* at ¶ 87.) He further alleges that at no time after the Consent to Change Attorney form was executed did C&S inform the state court, EEC, or NAC that there may be an issue with the validity of the Kayani Judgment and the continued right of anyone to continue debt collection efforts in regards to the Kayani Debt. (*Id.* at ¶ 91.)

On June 22, 2014, Mr. Kayani learned that his bank account at JPMorgan Chase Bank ("Chase") was restrained because of a restraining notice issued on or before June 21, 2014, by EEC on behalf of PFS, to collect the Kayani Debt. Mr. Kayani alleges that he had not been served with the Kayani State Action, and had no prior knowledge of the Kayani State Action or the judgment entered therein. (*Id.* at ¶¶ 92-93.) On July 31, 2014, EEC signed a stipulation agreeing to vacate the Kayani Judgment and dismiss the action with prejudice in exchange for a payment of $500. (*Id.* at ¶ 94.)

Mr. Kayani also alleges that the statute of limitations is equitably tolled for the same reasons found by the court in the *Coble* Class Action, as to any actions or omissions which occurred prior to one year before the filing of this action.

(*Id.* at ¶ 95.)  On or about July 21, 2014, Mr. Kayani received notice of his right to participate in the *Coble* Class Action. (*Id.* at ¶ 96.)  Mr. Kayani alleged he was not going to participate in the *Coble* Class Action. (*Id.*)

**E. Plaintiff Elizabeth K. Atwood a/k/a Elizabeth King**

Prior to February 27, 2005, plaintiff Elizabeth K. Atwood allegedly incurred a debt ("Atwood Debt"), as defined under 15 U.S.C. § 1692a of the FDCPA. (Compl., ECF No. 1 at ¶¶ 10, 51-52.)  On or before February 2, 2005, C&S, on behalf of Portfolio Recovery Associates ("PRA"), brought an action against Ms. Atwood in Civil Court of the City of New York ("Atwood State Action"), and hired Midlantic to serve the lawsuit on Ms. Atwood. (*Id.* at ¶ 52.)  On April 1, 2005, the Civil Court entered a default judgment against Ms. Atwood, based on application by C&S. (*Id.* at ¶ 53.)

In October 2006, C&S became aware of issues with lawsuits served by Midlantic. (*Id.* at ¶ 63.)  On October 26, 2006, Ms. Atwood filed a motion to vacate the April 2005 default judgment based, in part, on never having been served with the lawsuit. (*Id.* at ¶ 54.) On November 8, 2006, C&S appeared in court to oppose Ms. Atwood's motion and, after an unsuccessful attempt at settlement, C&S consented to the default judgment being vacated, provided that Ms. Atwood file an Answer without any jurisdictional defenses.  The April 1, 2005 judgment against

10

Ms. Atwood was vacated by the state court on November 8, 2006. (*Id.*)

Between December 17, 2006 and February 27, 2008, after C&S became aware, in October 2006, of the issues with lawsuits served by Midlantic, C&S continued its efforts to collect on the Atwood Debt while the Atwood State Action was pending by *inter alia*, sending several letters to her, attempting to call her, leaving several phone messages at her home, "sending out yearly letters informing [Ms.] Atwood" that a judgment was entered against her, "sending out bank restraints on at least a yearly basis," and other actions similar to actions taken to collect on the debts of plaintiffs Liew and Kayani. (*Id.* at ¶ 55.) On April 30, 2008, Ms. Atwood's file at C&S became dormant, and was reactivated on June 10, 2010, as a result of C&S conducting periodic checks. (*Id.* at ¶ 57.) On April 22, 2013, C&S used an automated dialer system to call a number believed by C&S to be Ms. Atwood's place of employment. (*Id.* at ¶ 56.)

On or about January 8, 2014, PRA terminated C&S's representation in the Atwood State Action and retained Forster & Garbus ("F&G") to collect the Atwood Debt; C&S closed its Atwood file at PRA's request on this day. (*Id.* at ¶ 58.) On or before January 30, 2014, C&S signed and returned a Consent to Change Attorney form to F&G, substituting F&G for C&S as PRA's attorney in the Atwood State Action. (Compl., ECF No. 1 at ¶ 58.) Ms.

Atwood alleges that C&S knew or should have known that F&G, on behalf of PRA, intended to attempt to collect the Atwood Debt and that delivery of the Consent to Change Attorney amounted to a representation to F&G, PRA, and the Civil Court that there were no issues or potential issues with what had occurred in the Atwood State Action. (*Id.* at ¶¶ 59-61.) She further alleges that at no time after C&S closed Atwood's file did C&S inform the Civil Court, F&G, or PRA that there may be an issue with the validity of the judgment and the right of anyone to continue debt collection efforts in regards to the Atwood Debt because of Midlantic's false and fraudulent service practices. (*Id.* at ¶¶ 61-64.)

On or about January 30, 2014, F&G served Bank of America with an Information Subpoena and Restraining Notice and represented that the vacated April 1, 2005 state court judgment was valid, which resulted in a restraint of $2,157.00 in two of Ms. Atwood's bank accounts and a $100 non-refundable fee. (*Id.* at ¶¶ 65-66.) Upon learning that her Bank of America accounts were restrained, Ms. Atwood opened bank accounts at JPMorgan Chase and directed deposits of her salary to her Chase accounts. (*Id.* at ¶ 67.) On or about February 5, 2014, Ms. Atwood's Chase accounts were restrained by an Information Subpoena and Retraining Notice issued by F&G, and based on the April 1, 2005 judgment. (*Id.* at ¶ 67-68.)

After her accounts were restrained, Ms. Atwood contacted C&S on an unspecified date to inquire as to the cause of the restraint. C&S advised her that they did not have her file and referred her to F&G. (*Id.* at ¶ 69.) Ms. Atwood contacted F&G and they informed her that the restraint was based on a debt she owed and offered to help her set up a repayment plan. (*Id.* at ¶ 70.)

Plaintiffs allege that prior to February 5, 2014, Ms. Atwood filed an Order to Show Cause in state court. (*Id.* at ¶ 71.) Upon receipt of the Order to Show Cause, on February 11, 2014, C&S asked PRA for permission to reopen Ms. Atwood's file to respond to the Order to Show Cause. PRA granted permission to C&S to represent PRA in contesting the Order to Show Cause in the Atwood State Action. (*Id.* at ¶ 72.) On February 18, 2014, Ms. Atwood, attorneys from C&S and F&G appeared at the Show Cause Hearing. (*Id.* at ¶ 75.) C&S submitted a response to Ms. Atwood's Order to Show Cause in the state court, which was prepared based on C&S's Atwood file, asserting that C&S's records did not show that PRA had restrained Ms. Atwood's accounts. Allegedly, C&S took no steps to ascertain if F&G had restrained Ms. Atwood's accounts on behalf of PRA. (*Id.* at ¶¶ 73, 75.) Ms. Atwood explained her reason for the Order to Show Cause to the court. Shortly thereafter, Ms. Atwood was called to another hearing room by an F&G attorney. (*Id.* at ¶ 75.) She next was called before

the judge, who signed a decision and order dismissing the Atwood State Action with prejudice. (*Id.*)

Plaintiffs also allege that the statute of limitations is equitably tolled for Ms. Atwood, for the same reasons found by the court in the *Coble* Class Action, as to any actions or omissions which occurred prior to one year before the filing of this action. (*Id.* at ¶ 76.) On or about July 21, 2014, Ms. Atwood received a notice of her rights to participate in the *Coble* Class Action. Ms. Atwood alleged she was not going to participate in the *Coble* Class Action. (*Id.* at ¶ 77.)

On May 11, 2014, three months before she commenced the instant action as a named plaintiff, Ms. Atwood filed a law suit in the Eastern District of New York, No. 14-cv-02973 (JFB)(AYS), against defendants[2] based on many of the same facts alleged in the present action. On March 26, 2015, the Honorable Joseph F. Bianco dismissed Ms. Atwood's first, second, fifth, sixth, seventh and eighth causes of action for failure to state a claim. (*See Atwood v. Cohen & Slamowitz, LLP et al.*, No. 14-cv-02973, ECF No. 53-1 at 16.) On February 8, 2017, Judge Bianco granted defendants' motion for summary judgment on plaintiffs third and

---

[2] Defendants Selip & Stylianou LLP ("S&S") named in Ms. Atwood's action under docket 14-cv-02973(JFB)(AYS), was known as Cohen and Slamowitz (C&S) during the period relevant to that complaint. *See Atwood v. Selip & Stylianou, LLP, et al.,* 14-cv-02973, ECF No. 85 at 1, n.1.

fourth claims, thereby dismissing the action in its entirety.
(*See id.*, ECF No. 85.)

Judge Bianco made several findings based on the undisputed factual record that are of significance to Ms. Atwood's overlapping claims in the instant action.  In both actions, Ms. Atwood alleged that C&S failed to inform its client, PRA, and successor counsel, F&G, that there were or "may be an issue with the validity of the judgment and the continued right of anyone to continue to attempt to collect the debt represented by the judgment." (Compl., ECF No. 1 ¶¶ 61-63.) Judge Bianco's summary judgment decision acknowledged that Ms. Atwood had alleged in her complaint that C&S failed to inform PRA and F&G that the state default judgment had been vacated, but found that this allegation and related allegations that form the factual bases for Ms. Atwood's FDCPA claims "have no factual support in the record." (*Atwood v. Cohen & Slamowitz, LLP et al.*, 14-cv-02973, ECF No. 85 at 5.) Judge Bianco determined, in relevant part, as follows:

> First, it is uncontroverted that [C&S] did
> inform PRA that the default judgment had been
> vacated.  In fact, [C&S] informed PRA that
> the default judgment had been vacated on
> multiple occasions. . . . Thus, the evidence
> produced through discovery completely
> undermines plaintiff's claim, and, absent
> evidence supporting a different conclusion,
> it fails as a matter of law.

This evidence also undermines plaintiff's claim that [C&S] "knew or should have known that F&G, on behalf of Portfolio Recovery Associates, intended to attempt to collect the debt which is the subject of the State Action" when [C&S's] representation was terminated. . . . Likewise, the uncontroverted evidence undermines plaintiff's assertion that omitting these facts "amounted to a representation to F&G, Portfolio Recovery Associates and the court that there were no issues or potential issues with what had occurred in the case. . . ." Because [C&S] informed PRA repeatedly that the judgment had been vacated, and there is no evidence suggesting [C&S] knew or should have known that PRA (or its agent, F&G) would have attempted to collect the debt in spite of knowing this information, these claims are simply unsupported by the facts. Therefore, they fail as a matter of law.

(*Id.*)  Judge Bianco granted defendants' motion for summary judgment and denied plaintiff Atwood's motion for summary judgment.  (*Id.* at 7.)

## F. Procedural History

Plaintiffs filed this Class Action Complaint on August 15, 2014.  (Compl., ECF No. 1.)  On December 8, 2014, defendants moved to disqualify the initial plaintiffs' counsel, Mitchell L. Pashkin ("Pashkin"), who also represented Ms. Atwood in her action filed three months earlier against C&S before Judge Bianco, based on Pashkin's prior employment as an attorney with C&S, during which he participated in the defense of the *Coble* Class Action.  (ECF No. 19.)  On September 22, 2015, this court granted the defendants' motion to disqualify Pashkin.  (ECF No.

30.)  On April 7, 2016, the parties filed the fully briefed motion to dismiss.  (See ECF Nos. 47-53.)

## DISCUSSION

### A. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted).  Although detailed factual allegations are not required, the pleading standard set forth in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955 (2007)).  "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations omitted).

For the purposes of deciding a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted). A district court may also consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted). That is, "a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*." *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012) (citation omitted); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleading in another lawsuit); *Young v. Selsky*, 41 F.3d 47, 50–51 (2d Cir. 1994) (taking judicial notice of defendant's testimony in a prior action). "In particular, [a court] can affirm the dismissal of a complaint for failure to state a claim based on the affirmative defense of *res judicata* if 'all relevant

facts are shown by the court's own records,' of which [the court] can take judicial notice." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

## I. Analysis

Defendants contend that the Complaint should be dismissed because plaintiffs Atwood and Kayani, by opting out of the *Coble* Class Action, waived their right to proceed as a class and are barred from bringing another class action based upon the identical factual predicate as the *Coble* Class Action. Defendants also argue that Mr. Liew's claim, and the class claims of those similarly situated, are untimely. For the reasons stated herein, the class claims, and the individual claims alleged by Ms. Atwood and Mr. Liew are dismissed for failure to state a claim. The court also finds that Mr. Kayani states plausible individual claims.

### a) The Class Claims That Include Individuals Sued in State Court Actions Between December 30 2002 and October 9, 2014, Are Barred by the *Coble* Class Action Settlement.

Defendants assert that the Complaint should be dismissed because it is based on the same factual predicate as the claims that were settled and released in the *Coble* Class Action. (Memorandum of Law in Support Defendants' Motion to Dismiss ("Def. Br."), ECF No. 49 at 8-12.)

Although the court recognizes that Mr. Kayani and Ms. Atwood allegedly opted out of the *Coble* Class Action, the court finds instructive cases regarding class action settlements, releases, and opt-outs, and their effect on subsequent class claims arising from identical core facts. A suit commenced subsequent to a class action settlement may be barred in a situation "analogous to the barring of claims that could have been asserted in the class action," specifically "where there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members." *TBK Partners, Inc. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982). A settled class action may release claims "not presented directly in [the class action] complaint" if the subsequent claims are "based on the identical factual predicate as that underlying the claims in the settled class action." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005), *cert. denied,* 544 U.S. 1044 (2005)); *In re WorldCom, Inc. Sec. Litig.*, No. 02-Civ-3288(DLC), 2005 WL 2495554, at *3 (S.D.N.Y. Oct.11, 2005) ("[A] class action settlement may 'prevent class members from subsequently asserting claims relying on a legal theory different from that relied on in the class action complaint, but

depending upon the very same set of facts.'") (quoting *Nat'l Super Spuds, Inc. v. N.Y. Merc. Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981)). "This rule of law serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010) (internal quotation marks omitted); *TBK Partners*, 675 F.2d at 460 ("[I]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action," a court "may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."). Whether a class claim pleaded in a subsequent lawsuit "is predicated on sufficiently similar facts as the class action claim to be barred by a class action settlement release is inherently an individualized, fact-specific [inquiry]." *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476 (DLC), 2016 WL 2731524, at *15 (S.D.N.Y. Apr. 26, 2016) (citation omitted).

Here, plaintiffs' four class claims are based on the same factual predicate as the *Coble* Class Action. The *Coble* Class Settlement Agreement identifies the core factual predicate that describes the Settlement Class in relevant part as:

> [A]ll persons who have been sued in . . . consumer collection actions . . . in New York State . . . in which C&S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.

(*Coble* Class Settlement Agreement, Ex. D to Francoeur Aff., ECF No. 48-4, at ¶ 21). The instant Complaint copies the identical language from the *Coble* Class Settlement Agreement to describe the identical factual predicate common to the four alleged classes:

> The classes alleged in the instant action consist of:
>
> I. (a) **all** natural **persons** (b) **who have been sued in one or more consumer collection actions commenced in New York State** between July 25, 2000 and December 29, 2002 **in which C&S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic;**
>
> II. (a) **all** natural **persons** (b) **who have been sued in one or more consumer collection actions commenced in New York State** between July 25, 2000 and the present **in which C&S represented the state court Plaintiff and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic** (c) where Defendants were terminated as the plaintiff's or plaintiff's assignee's attorney and the plaintiff or plaintiff's assignee or a person or entity on behalf of the plaintiff or plaintiff's assignee attempted to collect the debt which was the subject of the action or took any action in connection with the collection of the debt which was the subject of the action;

III. (a) **all** natural **persons** (b) **who have been sued in one or more consumer collection actions commenced in New York State** between July 25, 2000 and the present **in which C&S represented the state court Plaintiff and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic** (c) where Defendants signed and delivered a Consent To Change Attorney; and

IV. (a) **all** natural **persons** (b) **who have been sued in one or more consumer collection actions commenced in New York State** between July [sic] December 30, 2002 and the present and not included in the Prior Class Action as a result of a failure to be sent or receive a class notice or choosing to opt-out of the class **in which C&S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.**

(Compl., ECF No. 1 at ¶ 165) (emphasis added). The crux of the *Coble* Class Action was that in the consumer collection actions, C&S caused to be filed "affidavits of service provided by Midlantic;" and that C&S learned in October or November 2006 that Midlantic's service for C&S was "grossly deficient and fraudulent," and Midlantic's affidavits of service "were substantively false." (*Coble* Am. Compl., Ex. C to Francoeur Aff., ECF No. 48-3 at ¶¶ 1-3.) The *Coble* amended complaint further alleged that C&S failed to inform the state courts and the consumers it sued in state court about issues with Midlantic's affidavits of service, and "concealed information in order to

facilitate collections against consumers" in violation of the FDCPA. (*Id.* at ¶¶ 1-3.)

A commonsense reading of the *Coble* amended complaint and the instant Complaint clearly reveals that the class claims here arise from the identical factual predicate as those alleged in the *Coble* Class Action. Plaintiffs in *Coble* and the instant action both allege that C&S continued to enforce state court judgments it had obtained against consumer debtors even after C&S became aware in 2006 that its process server, Midlantic, had falsified affidavits of service in the underlying state court actions.

The only difference with the *Coble* amended complaint and the instant class action Complaint is that the instant Complaint specifically alleges collection and enforcement actions by C&S and the successor law firms against the named plaintiffs, and also seeks to broaden the temporal scope of the class. (Compl., ECF No. 1 at ¶¶ 40-49, 58-75, 85-94, 164-65.) The Complaint otherwise makes identical allegations about Midlantic's false and fraudulent service practices and C&S's collection and enforcement activities after C&S learned of Midlantic's false and fraudulent service practices in October 2006. All alleged class members in the instant action, whose state court collection actions were commenced between December 30, 2002 and October 9, 2014 (the date the *Coble* Class Settlement Agreement was approved

by the court), were also class members whose claims were settled and released in the *Coble* Class Action, unless, like Mr. Kayani and Ms. Atwood, they opted out. (*Id.* at ¶ 165.) The court addresses, *infra*, those purported class members, like Mr. Liew, who allege that state court collection actions by C&S were commenced between July 25, 2000 and December 30, 2002, and finds that those claims are time-barred.

In opposition to the defendants' motion to dismiss the Complaint, plaintiffs contend that some of the allegedly violative conduct underpinning their claims here occurred after the offending conduct alleged in the *Coble* Class Action, including C&S's continued debt collection efforts after learning of Midlantic's sewer service practice in October 2006. (Plaintiff's Opposition to the Motion to Dismiss ("Pl. Opp."), ECF No. 52 at 16-17; *see Coble* Am. Compl., Ex. C to Francoeur Aff., ECF No. 48-3 at ¶¶ 2-3, 38-44.) Plaintiffs specifically allege continued efforts to collect the Kayani and Atwood Debts which occurred in 2013 or later. (Pl. Opp., ECF No. 52 at 16-17.) Plaintiffs' argument fails because the continued debt collection efforts by C&S alleged in this action are based on the identical and foreseeable factual predicate as in the *Coble* Class Action. That the factual predicate in the *Coble* Class Action and the instant action are identical is beyond doubt because they both arise from and allege the "same core facts:" Midlantic's

false and fraudulent service and affidavits, the state court actions resulting in judgments based, in part, on Midlantic's false affidavits of service, and C&S's debt collection efforts even after learning of Midlantic's false and fraudulent service practices in October 2006. *See In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 272 F. App'x 9, 13 (2d Cir. 2008) (various fraud claims based on false statements made in different documents were based on the "same core of facts" and therefore arose out of the identical factual predicate).

Further, the post 2013 debt collection conduct, which plaintiffs allege in their class claims, was specifically contemplated by the *Coble* Class Settlement Agreement. The *Coble* Class Settlement Agreement, "entered into as of" May 27, 2014 and approved by the court on October 9, 2014, contains the following key definitions:

> 11. "**Involuntary Payment" means any payment** made by means of any device set forth in Article 52 of New York's Civil Practice Law and Rules ("Money Judgments – Enforcement") **including,** without limitation, wage garnishment, levy, execution, **bank restraint**, or other process covered by the statute. . . .

> 21. **"Settlement Class"** means all persons who have been sued in one or more consumer collection actions commenced in New York State **between December 30, 2002 and the present in which C & S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.**

Defendants represent that there are approximately 47,095 members of the Settlement Class.

22. "**Settlement Subclass**" means **all Settlement Class members who made one or more Involuntary Payments after October 30, 2006** following a judgment taken **(on any date before or after October 30, 2006) in a consumer collection action commenced in New York State in which C & S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.** Defendants represent that there are approximately 7,216 members of the Settlement Subclass. The term "Class members" where used herein without qualification means all Settlement Class members, inclusive of Settlement Subclass members.

(*Coble* Settlement Agreement, Ex. D to Francoeur Aff., ECF No. 48-4 at ¶¶ 11, 21, 22 (emphasis added).) Further, "Released Claims" are defined, in relevant part, in the *Coble* Settlement Agreement as "[c]laims for statutory damages under the FDCPA, as well as release of all claims that were raised or could have been raised in the instant action based on a common nucleus of operative facts." (*Id.* at ¶ 18.)

In the instant Complaint, plaintiffs allege class claims comprised primarily of persons whose claims were settled and released by the *Coble* Class Action Settlement Agreement. For example, all of the plaintiffs' alleged classes include persons who have been sued in consumer collection actions in New York

state court in which C&S represented the creditor-plaintiffs and the affidavits of service were signed by Midlantic.

Specifically, Class II and Class III, which include persons sued in consumer collection actions in New York state court "between July 25, 2000 and the present," (Compl., ECF No. 1 at ¶ 165), are largely the same persons included in the *Coble* Settlement Class. The *Coble* Class Action Settlement Class encompassed all persons who have been sued in consumer collection actions in New York State court "**between December 30, 2002 and the present,**" in which C&S represented the creditor-plaintiffs and the affidavits of service were signed by Midlantic. (*Coble* Class Action Settlement Agreement, Ex. D to Francoeur Aff., ECF 48-4 at ¶ 21.) Thus, the claims for persons sued in consumer collection actions in New York State court "between December 30, 2002 and the present," were already resolved in the *Coble* Class Action and the *Coble* Settlement Agreement released "all claims that were raised or could have been raised."[3] (*Coble* Settlement Agreement, Ex. D to Francoeur Aff., ECF No. 48-4 at ¶¶ 18, 21, 54.) Accordingly, Class II and Class III claims are dismissed

---

[3] The *Coble* Class Settlement Agreement's release provision made clear that class members "will each forever release, discharge, waive, and covenant not to sue the Released Parties regarding any of the Released Claims. This release includes all such claims that the [class members] do not know of or suspect to exist in their favor at the time of this release and that if known by them might have affected their settlement and release of the Released Parties, or might have affected their decision to object to this agreement." (*Coble* Settlement Agreement, Ex. D to Francoeur Aff., ECF No. 48-4 at ¶ 54.)

because they attempt to assert class claims on behalf of persons who were sued "in one or more consumer collection actions commenced in New York State between [December 30, 2002] and the present in which C&S represented the state court Plaintiff and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic." (Compl., ECF No. 1 at ¶ 165.)

The Class IV claim which includes, in relevant part, persons "not included in the [*Coble*] Class Action as a result of . . . choosing to opt-out of the class," are also dismissed because a person who opts out of a class action can pursue his or her individual claims, but not class claims arising from the same core facts. (*Id.*) Class members who opt out of a class action are free to file separate individual claims, but they may not frustrate the efficiency and benefits afforded by the class action procedure by opting out of the class action and then resurrecting class claims in the same or a separate action. If opt-out plaintiffs wish to pursue their individual claims, they must do so individually, and not as a resurrected class asserting claims arising from factual predicates identical to those asserted in the prior class action from which they opted out. *See Morris v. Affinity Health Plan, Inc.*, 928 F. Supp. 2d 805, 811–12 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 51 (2d Cir. 2014) (citing *Martens v. Smith Barney, Inc.*, 190 F.R.D. 134, 139–40

(S.D.N.Y. 1999)); *see also Eisen v. Carlisle*, 417 U.S. 156, 176, 94 S. Ct. 2140, 2152 (1974) ("[Under Rule 23], each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim *separately* or that he may remain in the class and perhaps participate in the management of the [class] action.") (emphasis added). If a plaintiff exercises the right to be excluded from the class action by opting out, the plaintiff thereby relinquishes his right to bring class claims and may proceed only on an individual basis. *See Johnson v. Nextel Commc'ns, Inc.*, 293 F.R.D. 660, 666-67 (S.D.N.Y. 2013), *vacated on other grounds*, 780 F.3d 128, 136 n.10 (2d Cir. 2015).[4] Thus, the class claims of persons who opted out of the *Coble* Class Action, as described in Class IV in the instant action are barred.

Moreover, plaintiffs Atwood and Kayani had ample opportunity to object to the terms of the *Coble* Settlement Agreement, including the notice and scope of the released claims. Accepting plaintiff's allegations as true, C&S and the successor law firms allegedly injured Ms. Atwood, at the latest, by February

---

[4] When vacating the district court's ruling, the Second Circuit noted that the district court's holding that parties who opted out of the class settlement, "had preserved their right to proceed only on an individual basis," was not raised on appeal. *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 136 n. 10 (2d Cir. 2015). Therefore, the Second Circuit did not address this holding when vacating the district court's decision.

5, 2014, when her Chase account was restrained, and Mr. Kayani, at the latest, by June 22, 2014, when his Chase account was restrained. (Compl., ECF No. 1 at ¶¶ 67, 93.) Ms. Atwood and Mr. Kayani also allege other conduct by C&S after October 2006 that allegedly violated the FDCPA.

The *Coble* Class Action Settlement Agreement was executed by the parties on May 27, 2014, and approved by the court on October 9, 2014. (*Coble et al v. Cohen & Slamowitz, LLP et al*, No. 11-cv-01037 (ER), Final Approval Order and Judgment, ECF No. 90.) The instant action was commenced on August 15, 2014, prior to the filing of Motions for Approval of the *Coble* Class Action Settlement Agreement (filed on September 24, 2014), prior to the Fairness Hearing on the *Coble* Class Action Settlement Agreement (held on October 2, 2014), and prior to the final approval of the *Coble* Class Action Settlement Agreement on October 9, 2014. (*See Coble* Class Action, No. 11-cv-01037 (ER), ECF Nos. 83-90). Ms. Atwood and Mr. Kayani allege that they received a class notice in the *Coble* Class Action on July 21, 2014, but they do not explicitly allege that they had opted out of the *Coble* Class Action Settlement. Instead, both Ms. Atwood and Mr. Kayani allege that "[s/h]e is not going to participate" in the *Coble* Class Action Settlement. (Compl., ECF No. 1 at ¶¶ 77, 96.)

Thus, plaintiffs Atwood and Kayani had a full opportunity to litigate the same class issues in the *Coble* Class Action that they assert here. They instead commenced this class action against C&S alleging their intention to opt-out of the *Coble* Class Action and alleging the same factual predicate as in *Coble*. This plaintiffs cannot do. As discussed above, "the opt-out right merely ensures that each putative class member retains the ability to act *independently* of the class action if she so elects. . . . The opt-out right does not confer extra benefits to a plaintiff's independent action." *In re Lehman Bros. Sec. & Erisa Litig.*, 655 F. App'x 13, 16 (2d Cir. 2016) (emphasis added), *cert. granted in part sub nom. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 811 (2017). Plaintiffs may not bring another class action based on the identical factual predicate as the class action from which the plaintiffs opted out. To allow the plaintiffs here to proceed with their class claims, which alleged the identical factual predicate as the *Coble* Class Action from which they allegedly opted out, would betray the efficiencies of class actions and class settlements. *See Morris*, 928 F. Supp. 2d at 811, *aff'd*, 558 F. App'x 51 ("'The efficiency afforded by the class action procedure would be poorly served if numerous class members were permitted to opt out of the class and then remain in the litigation with supposedly

resurrected individual claims.'") (quoting *Martens,* 190 F.R.D. at 139).

The court also dismisses the Class IV claims of persons, not included as *Coble* class members "as a result of a failure to be sent or receive a class notice," because counsel for the parties in *Coble* negotiated and agreed, with court review and approval, the Notice and the method for providing Notice to all putative class members. (Compl., ECF No. 1 at ¶ 165.) Indeed, the parties to the *Coble* Settlement agreed that the Final Approval Order and Judgment by the court shall: "find that the form and manner of disseminating class Notice as set forth in this Settlement Agreement . . . was accomplished as directed, constituted the best practicable notice under the circumstances, met or exceeded the requirements of due process, and constituted due and sufficient notice to all members of the Settlement Class and Settlement Subclass." (*Coble* Class Settlement Agreement, Ex. D to Francoeur Aff., ECF No. 48-4 at ¶ 37(g).) Thus, the Class IV claims, for persons who purportedly did not receive the *Coble* Notice, are dismissed. *See Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (If a class notice comports with due process, a class action settlement may bind absent class members even if the absent class member received only constructive notice.); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 947 F. Supp. 750, 755-56 (S.D.N.Y. 1996)

(concluding that because the court approved Notice program met Rule 23's requirement and comported with due process, a class member who alleged that he did not personally receive notice of the class settlement was still bound by the settlement's terms).

Even if plaintiffs may not have alleged exactly the same violations of the FDCPA and state law,[5] and may have asserted claims that were not assertable in the *Coble* Class Action, they may not reassert class claims arising from the same factual predicate here. "The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart Stores*, 396 F.3d at 107; *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 248 (A settled class action may release claims "not presented directly in [the class action] complaint" if the subsequent claims are "based on the identical factual predicate as that underlying the claims in the settled class action.") (internal quotation marks and citation omitted); *TBK Partners*,

---

[5] The *Coble* plaintiffs alleged FDCPA violations of 15 U.S.C. § 1692d, 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692e(10), and 15 U.S.C. § 1692f. (*See Coble* Am. Compl., Ex. C to Francoeur Aff., ECF No. 48-3 at ¶ 101.) Here, plaintiffs allege the same FDCPA violations—except the instant plaintiffs do not allege violations 15 U.S.C. § 1692e(10)—but they also allege other additional FDCPA violations including 15 U.S.C. § 1692e(5) and 15 U.S.C. § 1692f(1) and state law violations under N.Y. GBL § 349, and N.Y. Jud. Law § 487. (*See* Compl., ECF No. 1 at ¶¶ 97-163.)

675 F.2d at 461 ("[W]here there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members, the situation is analogous to the barring of claims that could have been asserted in the class action."); *In re WorldCom*, 2005 WL 2495554, at *3 ("[A] class action settlement may 'prevent class members from subsequently asserting claims relying on a legal theory different from that relied on in the class action complaint, but depending on the very same set of facts.'") (quoting *Nat'l Super Spuds*, 660 F.2d at 18 n.7).  Thus, the class claims predicated on C&S's continued efforts to collect on state court judgments after learning, in October 2006, of Midlantic's false and fraudulent service practices, even if the claims were not alleged in the *Coble* Class Action, are dismissed because they are based on the identical factual predicate as in the *Coble* Class Action.

Plaintiffs also argue that the *Coble* Class Action class representatives did not adequately represent their claims, (Pl. Opp., ECF No. 52 at 17-21), but this argument must be rejected. As discussed above, plaintiffs Atwood and Kayani had the opportunity to object to the *Coble* Class Settlement, including challenging the adequacy of the representation, but instead allegedly opted out of the class.  Therefore, they have waived

their right to challenge the adequacy of the class representation in the *Coble* Class Action. *See e.g. Joel A. v. Giuliani*, 218 F.3d 132, 143 (2d Cir. 2000) (holding that parties had waived their rights to challenge the adequacy of the subclasses where objections were not raised before the district court). Further, even though Ms. Atwood and Mr. Kayani allege that they opted out of the *Coble* Class action, the court finds that plaintiffs' interests were adequately aligned with the interests of the *Coble* class members because their claims arose out of an identical factual predicate. *See Wal-Mart Stores*, 396 F.3d at 113 ("[A]dequate representation of a particular claim is determined by the alignment of interests of class members."). Thus, plaintiffs' arguments as to the adequacy of the representation in the *Coble* Class Action are without merit because they opted out, thereby removing themselves from the class action entirely. *See Morris*, 928 F. Supp. 2d at 811, *aff'd*, 558 F. App'x 51 (parties "who opt out of a class action are removed from the case entirely") (citing *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 810-11, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985)).

Consequently, this court dismisses all of the class claims of persons described in Classes II, III, and IV,[6] who were

---

[6] The court notes that the *Coble* Amended Complaint defined the Settlement Class broadly and without temporal limits as:

> All persons who have been sued in a consumer collection action commenced in New York State in which C&S represented the Plaintiff; and the affidavit of

sued "in one or more consumer collection actions commenced in New York State between December 30, 2002 and the present in which C&S represented the state court Plaintiff and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic," as their claims were already settled and released as of October 9, 2014, when the *Coble* court granted final approval to the *Coble* Class Action Settlement Agreement.  (Compl., ECF No. 1 at ¶ 165; *Coble*, No. 11-CV-01037 (S.D.N.Y.), Final Approval Order and Judgment, ECF No. 90.)

> **b) Ms. Atwood's Individual Claims Are Barred by *Res Judicata***

Even if the class claims were not barred by the *Coble* Settlement Agreement, Ms. Atwood would not be a proper class representative because her individual and class claims are barred by *res judicata* or claim preclusion.  *Res judicata* "bars later litigations if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *EDP Med. Computer Sys.,*

---

service was signed and/or notarized by Midlantic or any owner agent or employee of Midlantic.
(*See Coble* Am. Compl., Ex. C to Francoeur Aff., ECF No. 48-3 ¶ 85.)  Under this temporally unlimited class definition, the claims of persons described in the instant action, who were sued in a consumer collection action between July 25, 2000 and December 29, 2002, including Mr. Liew, would be included in the *Coble* class.  However, the *Coble* Settlement Agreement prescribed a temporal limit "between December 30, 2002 and the present," in defining the Settlement Class, and "after 2006" in defining the Settlement Subclass.  (*Coble* Class Action Settlement Agreement and Release Ex. D to Francoeur Aff., ECF No. 48-4 at ¶¶ 21-22.)

*Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (citation and internal quotation marks omitted).  Thus, "later claims arising out of the same factual grouping as an earlier litigated claim are barred, even if the later claims are based on different legal theories or seek dissimilar or additional relief." *Garcha v. City of Beacon*, 232 F. App'x. 74, 75 (2d Cir. 2007).

By opting out of the *Coble* Class Action, Ms. Atwood secured the right to proceed on an individual basis and nothing more.  Ms. Atwood availed herself of that right and commenced an individual action against the same defendants in the Eastern District of New York on May 11, 2014, three months before commencing the instant action, against the same defendants, based on the same core facts and FDCPA claims alleged here.  (*See Atwood v. Cohen & Slamowitz, LLP, et al.*, No. 14-cv-02973, Complaint, ECF No. 1.)[7]  Ms. Atwood's individual claims were adjudicated, found to be without merit, and dismissed by Judge Joseph F. Bianco.  First, by order dated March 26, 2015, Judge Bianco granted defendants' motion to dismiss Ms. Atwood's first, second, fifth, sixth, seventh, and eighth causes of action for failure to state a claim upon which relief may be granted.  (*See Transcript of Judge Bianco's ruling on defendants' motion to*

_____

[7] The action by Ms. Atwood, in case No. 14-cv-02973, and the instant class action were commenced by Mitchell Pashkin, Esq., who had previously worked on the *Coble* litigation defending C&S, before his employment as an attorney with C&S was terminated.  As noted above, this court disqualified Mr. Pashkin from representing the plaintiffs in this action.  (ECF No. 30.)

dismiss in *Atwood v. Cohen & Slamowitz, LLP, et al.*, No. 14-cv-02973 dated March 26, 2015, attached to Plaintiff's Opposition to the Motion to Dismiss, ECF No. 52-1).    In a Memorandum and Order dated February 8, 2017, Judge Bianco granted defendants' motion for summary judgment on plaintiff's remaining third and fourth causes of action.  As described, *supra*, Judge Bianco found on the undisputed facts that C&S had notified its client, PRA, numerous times that Ms. Atwood's judgment had been vacated, and thus her claims pursuant to the FDCPA failed as a matter of law. (*Atwood v. Cohen & Slamowitz, LLP, et al.*, No. 14-CV-02973, Memorandum and Order, ECF No. 85 at 5.)    Judge Bianco also found that Ms. Atwood's claim that C&S "knew or should have known" that the successor law firm F&G would continue collection efforts on behalf of PRA was without factual basis.  (*Id.*)  Similarly, Judge Bianco noted that the uncontroverted evidence undermined Ms. Atwood's assertion that C&S's omission of facts regarding the vacatur of Ms. Atwood's state court judgment, "amounted to a representation to F&G, [PRA] and the [state] court that there were no issues or potential issues with what had occurred in the case." (*Id.*)    Given that C&S repeatedly informed its client, PRA, that Ms. Atwood's judgment had been vacated, there was no evidence that C&S knew or should have known that PRA or its agent, F&G would attempt to collect Ms. Atwood's debt.  (*Id.*)  Judge Bianco held, based on uncontroverted facts, that plaintiff's two

remaining claims failed as a matter of law, and granted summary judgment to defendants and dismissed Ms. Atwood's action in its entirety. (*Id.* at 7.)

Ms. Atwood makes many of the same individual allegations and asserts claims in the instant action arising from the same core facts as the claims dismissed by Judge Bianco. Accordingly, the court finds that Ms. Atwood's individual claims are barred by *res judicata*, and they are dismissed. *See Garcha*, 232 F. App'x at 74.

### c) Mr. Kayani States a Plausible Individual Claim

Mr. Kayani has stated a plausible individual claim. Mr. Kayani, like Ms. Atwood, was invited to join the *Coble* Class Action on July 21, 2014, but alleges that he was "not going to participate." (Compl., ECF No. 1 at ¶ 96.) "[T]he opt-out right merely ensures that each putative class member retains the ability to act independently of the class action if she so elects." *In re Lehman Bros. Sec. & Erisa Litig.*, 655 F. App'x at 16. Mr. Kayani filed this action independently of the *Coble* Class Action—albeit while it was still pending and, possibly, before he opted out—to vindicate his rights arising from C&S's debt collections efforts after C&S learned of Midlantic's false and fraudulent service practices in October 2006. As discussed herein, Mr. Kayani's claims are based on the identical factual predicate as the *Coble* Class Action, but he is not a member of

40

the *Coble* Class or Subclass. This court agrees with the *Coble* court's denial of a motion to dismiss the *Coble* Class Action, and finds that Mr. Kayani's individual allegations, like the allegations in the *Coble* Class Action, state a plausible claim. *Coble*, 824 F. Supp. 2d at 571. Accordingly, defendants' motion to dismiss as to Mr. Kayani's individual claims is denied.

### d) Mr. Liew's Claims are Time-Barred

The claims of Mr. Liew and those similarly situated to him, that is, individuals "who have been sued in one or more consumer collection actions commenced in New York State between July 25, 2000 and December 29, 2002 in which C&S represented the state court plaintiff, and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic," are time-barred. (Compl., ECF No. 1 at ¶ 165.) Mr. Liew and those alleged to be similarly situated were not members of the *Coble* Settlement Class which was defined as:

> [A]ll persons who have been sued in one or more consumer collection actions commenced in New York State between **December 30, 2002 and the present** in which C&S represented the state court Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic. Defendants represent that there are approximately 47,095 members of the Settlement Class.

(*Coble* Class Settlement Agreement, Ex. D to Francoeur Aff, ECF No. 48-4, at ¶ 21) (emphasis added).

The Liew State Action was commenced by C&S, on behalf of NAC, on July 25, 2000. (Compl., ECF No. 1 at ¶ 34.) The default judgment in the Liew State Court action was entered on December 18, 2000. (*Id.* at ¶ 37.) Plaintiff Liew alleges that C&S, in the normal course of its business continued to attempt to collect the judgment, *inter alia*, "by sending out yearly letters informing Liew that there was a judgment against him . . ., by sending out bank restraints on at least a yearly basis," and attempting to search for his recent address and place of employment, and to reach him by telephone, via auto-dialer and manually. (*Id.* at ¶ 38.) On June 21, 2012, NAC terminated C&S's representation of it in the Liew State Action, and C&S executed a Consent to Change Attorney form and sent it to successor counsel, EEC. (*Id.* at ¶¶ 41-42.) Plaintiffs allege that C&S knew or should have known that EEC would file the substitution of counsel in state court, and that C&S did not notify its client, NAC, successor counsel, or the state court that Midlantic's service on Mr. Liew was subject to challenge. (*Id.* at ¶¶ 44-47.)

Actions brought under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Wright v. Zabarkes*, 347 F. App'x 670, 671–72 (2d Cir. 2009). "While a question may exist as to whether the cause of action accrues on the date upon which the allegedly unlawful communication is sent or received, there is no question

that the latest date upon which the one year period begins to run is the date when a plaintiff receives an allegedly unlawful communication." *See Nichols v. Niagara Credit Recovery, Inc.*, No. 5:12-CV-1068 (MAD) (TWD), 2013 WL 1899947, at *5 (N.D.N.Y. May 7, 2013) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 n. 2 (2d Cir. 1992)).

Mr. Liew argues that his claims accrued when his Citibank bank account was restrained, not by C&S, but by successor counsel, EEC, on April 3, 2014, (*see* Compl., ECF No. 1 at ¶ 48; Pl. Opp., ECF No. 52 at 13-15.) Plaintiffs cite *Benzemann v. Citibank N.A.*, 806 F.3d 98, 101 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 618 (2017) in support of the position that Mr. Liew's claims are timely. In *Benzemann*, the court reversed the district court's determination that the statute of limitations began to run on the date the debt collector allegedly violated the FDCPA by issuing a restraining notice to the plaintiff's bank, rather than the date the bank actually restrained the account. The district court dismissed the action as untimely because it was filed more than one year after the defendant issued the restraining notices to the plaintiff's bank, and exactly one year after the account was restrained. (*Id.* at 101.) The Second Circuit noted that even if the sending of the restraining notice allegedly violated the FDCPA because the notice constituted a "false, deceptive, or misleading representation," Benzemann

43

suffered no actionable injury and had no cause of action before his bank account was restrained. (*Id.*) The *Benzemann* court held that the FDCPA violation occurred when the bank actually restrained Benzemann's account pursuant to the defendant's restraining notice, rather than the date that the defendant sent the allegedly unlawful restraining notice. (*Id.* at 103).

Unlike the plaintiff in *Benzemann*, Mr. Liew has alleged a multitude of actionable injuries prior to learning on April 3, 2014 that his Citibank accounts had been restrained. Mr. Liew has alleged injuries beginning in October 2006, when C&S learned of the defects with Midlantic's affidavits of service, but failed to review its files, and instead continued its debt collection efforts against Mr. Liew, including attempting to enforce the judgment entered against Mr. Liew on December 18, 2000 in violation of the FDCPA. As set forth above, plaintiff alleges, *inter alia*, that C&S sent him yearly notices and "bank restraints on at least a yearly basis," and took other collection actions. (Compl., ECF No. 1 at ¶ 38.) Mr. Liew also alleges that when C&S was terminated and substituted as counsel for NAC on June 21, 2012, the failure of C&S to inform its client, NAC, successor counsel, EEC, Mr. Liew and the state court that the validity of the judgment against Mr. Liew was in question, also violated the FDCPA because C&S knew or should have known that EEC would

44

continue to attempt to collect on the Liew Debt. (*Id.* at ¶¶ 40-47.)

Plaintiff Liew alleges "complete and present cause[s] of action," for over 7 ½ years prior to April 3, 2014, when his accounts were restrained and he allegedly learned of the judgment. *Benzemann*, 806 F.3d 98 at 101. Accepting plaintiffs' allegations as true, this court agrees with the decision in *Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 572 (S.D.N.Y. 2011), that the alleged facts state plausible claims to the extent they are not time-barred, or are equitably tolled. The court must accept as true plaintiff's allegations that after October 2006, when C&S learned of the Midlantic's false and fraudulent service practices, C&S continued to send "out yearly letters informing Liew that there was a judgment against him," as well as "bank restraints on at least a yearly basis." (Compl., ECF No. 1 at ¶ 38.) After the end of C&S's representation in the Liew State Action on June 21, 2012, there are no allegations that C&S continued debt collection efforts against Mr. Liew.

Based on his allegations, Mr. Liew had "complete and present cause[s] of action" against C&S when the defendants' representation was terminated in June 2012, nearly two years before his account was restrained, by successor counsel, EEC, on April 3, 2014. *Benzemann*, 806 F.3d 98 at 101. Mr. Liew's claims are untimely because he alleges that C&S sent him annual letters

informing him of the judgment entered against him, and that C&S sent out bank restraints on at least a yearly basis. (Compl., ECF No. 1 at 38.)  Accepting his allegations as true, Mr. Liew had notice of the alleged violations by C&S years before his bank account was restrained by successor counsel, EEC.  Mr. Liew is unlike the plaintiff in *Benzemann* whose sole actionable injury occurred when his accounts were restrained exactly one year before he filed his lawsuit.  Nowhere does *Benzemann* hold that time-barred FDCPA claims can be rehabilitated more than a year after the violation, if further debt collection efforts, such as the restraint of a bank account, are continued thereafter by another debt collector.  *See Benzemann*, 806 F.3d 98 at 101-03.

Even assuming the truth of Mr. Liew's allegations that he did not know until April 2014 of the state court judgment and that his bank accounts were restrained in violation of the FDCPA, he alleges that successor counsel, EEC, and not defendants, issued the restraining notice.  Mr. Liew alleges that C&S's involvement in any debt collection activities on Mr. Liew's judgment ended on June 21, 2012, when C&S was (1) terminated as counsel for NAC in the Liew State Action and (2) when C&S executed and sent a Consent to Change Attorney form to EEC. (Compl., ECF No. 1 at ¶¶ 40-42.)  Plaintiffs allege that C&S knew or should have known that its delivery of the Consent to Change Attorney form amounted to a representation to EEC, NAC and the state court

that there were no issues with the judgment in the Liew State Action. (*Id.* at ¶ 45.)  Thus, any claim against C&S accrued on or about June 21, 2012, well before this action was filed on August 15, 2014.  *See Shieh v. Flushing Branch, Chase Bank USA, N.A.*, No. 11-CV-5505 (CBA) (SMG), 2012 WL 2678932, at *6 (E.D.N.Y. July 6, 2012) (holding that FDCPA claim was time-barred where the default judgment and the assignment of the judgment occurred more than five years prior to the filing of the action and where the original debt collector had no further involvement in the matter after the assignment); *see Coble*, 824 F. Supp. 2d at 571 (finding that, absent equitable tolling, two of the three named plaintiffs' claims were barred by the statute of limitations because the complaint did not specifically allege that the defendants violated the FDCPA within a year of the complaint being commenced).

Further, the court finds that plaintiffs have not stated a plausible claim against C&S, based upon any conduct by EEC and NACs that occurred after C&S's legal representation of NAC ended on June 21, 2012.  In order to state a plausible claim that C&S violated the FDCPA after it ceased representing NAC, plaintiffs must plead sufficient facts supporting a finding that C&S was an agent of EEC and NAC after June 21, 2012.  In order to hold a debt collector vicariously liable for the acts of the agent, the plaintiff must allege plausible facts that (1) the

agent and principal are both debt collectors [under the FDCPA]; and (2) the principal has exercised control over the agent's conduct or activities. *See Nichols*, 2013 WL 1899947, at *5 (citing *Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868 (PKC), 2011 WL 4344044, at *4 (S.D.N.Y. Sept. 8, 2011)).

Mr. Liew's allegation that C&S, NAC, and EEC are debt collectors under the FDCPA satisfies the first factor. Mr. Liew, however, failed to plead any facts that plausibly support a claim that defendant C&S exercised control over EEC's or NAC's debt collection activities after C&S was terminated as NAC's counsel in June 21, 2012. *See Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (E.D.N.Y. 2011); *Herzlinger v. Nichter*, 09 Civ. 00192, 2011 WL 1434609 at *9 (S.D.N.Y. Feb. 9, 2011). Instead, Mr. Liew has alleged that C&S's engagement on the Liew State Action was terminated by NAC on June 21, 2012, that EEC was substituted as counsel, that C&S failed to advise NAC or EEC about the questionable validity of the Liew Judgment due to Midlantic's fraudulent service of process on Mr. Liew in the state court action, and that EEC, on behalf of NAC, caused Mr. Liew's bank accounts to be restrained. (Compl., ECF No. ¶¶ 40-48.) Absent any allegations that C&S exercised control over EEC's or NAC's actions, C&S cannot be held liable for EEC's or NAC's conduct. In the absence of a sufficiently pleaded agency relationship between C&S, and NAC and EEC, plaintiffs have not

stated timely claims against C&S within the applicable one-year statute of limitations. Consequently, Mr. Liew's claims are barred by the statute of limitations, unless equitable tolling applies. *See Nichols*, 2013 WL 1899947, at *5 (finding FDCPA claim was untimely against debt collectors where the complaint made no allegations of injuring conduct by these parties within a year of the filing of the complaint, and where the debt collectors were agents of the previous debt holders, and not the debt collectors who engaged in the alleged violating conduct).

Mr. Liew argues and alleges in the Complaint that the statute of limitations should be tolled for the same reasons stated in *Coble,* 824 F. Supp. 2d at 572. "[E]quitable tolling is only appropriate in rare and exceptional circumstance[s] . . . , in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, citations, and alterations omitted). Plaintiffs must show that: (1) the defendant concealed the existence of plaintiffs' cause of action; (2) plaintiffs remained in ignorance of that cause of action until some length of time within the statutory period before commencement of their action; and (3) plaintiffs' continuing ignorance was not attributable to lack of diligence on their part. *Sykes v. Mel Harris and Assocs.*, 757 F. Supp. 2d

413, 422 (S.D.N.Y. 2010) (citing *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).

In considering defendants' motion to dismiss based on untimeliness, the *Coble* court found that the claims of two of the three named plaintiffs' claims were untimely because the complaint did not specifically allege that the defendants' violated the FDCPA within a year of the action being commenced, unless equitable tolling applied. *Coble*, 824 F. Supp. 2d at 571. The court determined that Ms. Coble's action was not time-barred because she alleged that within a year of the commencement of the action, C&S had continued affirmatively to misrepresent that Midlantic's affidavits were true and proper. (*Id.* at 570-71).

The *Coble* court then considered whether the three requirements for the application of equitable tolling in extraordinary circumstances were met: (1) defendant concealed the existence of the plaintiff's cause of action; (2) plaintiffs remained ignorant of that cause of action until some point within the limitations period; and (3) plaintiffs' continued ignorance was not due to a lack of diligence. (*Id.* at 571) (citations omitted). First, the court found that the concealment requirement for equitable tolling was met because C&S falsely and affirmatively reasserted the validity of the faulty affidavits of service, and continued to collect on debts involving Midlantic's false and fraudulent service practices after becoming

50

aware of the problem in October 2006. (*Id.*) Second, the *Coble* court found that plaintiffs were ignorant of the problem with the Midlantic affidavits of service until they discovered the Vega Affidavit in 2010.[8] The court further noted that the Vega Affidavit was not publicly available on PACER until the *Coble* lawsuit was filed on February 15, 2011. Thus, the *Coble* court found the second factor of equitable tolling was satisfied. (*Id.* at 570, 572). Lastly, with regard to the third factor examining the plaintiff's diligence or lack thereof, the court found that the plaintiffs did not sit on their rights, as they only became aware of the Vega Affidavit in 2010, and that the Vega Affidavit was not publicly available on PACER until the *Coble* Class Action was filed in February 2011. (*Id.* at 572.) Consequently, the court tolled plaintiffs' claims until February 15, 2011, when the *Coble* Class Action was filed and the Vega Affidavit became available on PACER. (*Id.*)

Applying the equitable tolling factors to Mr. Liew's claim, the court first finds that plaintiffs allege in conclusory fashion that defendants concealed the existence of Mr. Liew's cause of action by sending annual letters informing Mr. Liew of the judgment and annual restraints of his bank accounts,

---

[8] The Vega Affidavit was submitted in the *Caprino* lawsuit by a former Midlantic employee, who disclosed that Midlantic had falsified thousands of affidavits of service between 1995 and 2006, in order to maintain its business relationship with C&S. *Coble*, 824 F. Supp. 2d at 569-70.

presumably after C&S learned in October 2006 of the problems with Midlantic's affidavits of service. Mr. Liew alleges with regard to the second factor that he remained ignorant of the cause of action until April 2014, when his account was restrained.

Defendants argue that even if equitable tolling were to apply to plaintiffs, the statute of limitations expired on February 15, 2012, one year after the *Coble* Class Action was filed and when the Vega Affidavit became publicly available. (Def. Br., ECF No. 49 at 8.) The court agrees with defendants and the *Coble* court that, prior to the Vega Affidavit becoming publicly available on PACER upon the filing of the *Coble* Class Action on February 15, 2011, plaintiffs like Mr. Liew "could not have engaged in due diligence" in vindicating their rights arising from C&S's continued debt collection efforts after C&S learned of the issues with Midlantic's sewer service. *Coble*, 824 F. Supp. 2d at 572.

The court finds, however, that Mr. Liew has not alleged sufficient facts establishing that his ignorance was not due to a lack of diligence, and that extraordinary circumstances justify equitable tolling after February 15, 2011, when the Vega Affidavit became public and when the *Coble* Class Action was filed. Equitable tolling is warranted in "a situation where a plaintiff could show that it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*

*v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (internal quotation marks and citations omitted). It clearly was not impossible for a reasonably prudent person who allegedly was being sent "yearly letters," annual restraints against bank accounts, and receiving regular phone calls from C&S, to learn about his or her cause of action under the FDCPA, after the *Coble* Class Action was filed and the Vega Affidavit became public. By February 15, 2011, when the Vega Affidavit, which exposed Midlantic's false and fraudulent service practices, became available on the public *Coble* docket, Mr. Liew, with reasonable diligence, should have discovered defendants' FDCPA violations, specifically, that C&S was violating the FDCPA by continuing to attempt to enforce the judgment and collect on the Liew Debt, in spite of C&S's knowledge that the validity of the judgment was questionable. *See Vincent v. Money Store*, 304 F.R.D. 446, 458 (S.D.N.Y. 2015) (denying request for equitable tolling because "plaintiffs have not alleged facts showing due diligence to discover such a cause of action") (citing *Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606 ER, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) (same)).

Further, plaintiffs have alleged that C&S was engaged in the Liew State Action only until June 21, 2012; therefore, plaintiffs have not plausibly alleged that after June 21, 2012, C&S acted to conceal from plaintiffs the questionable validity

of the Liew Judgment or the existence of a cause of action for the violations regarding the collection and enforcement of the Liew Judgment. Thus, even if the court were to find that Mr. Liew, and those similarly situated, were entitled to equitable tolling after the *Coble* Class Action was filed and the Vega Affidavit became publicly available on February 15, 2011, the court would only toll the statute of limitations to June 21, 2012, the date on which C&S ceased to conceal or attempt to collect the Liew Judgment. Consequently, the statute of limitations for FDCPA claims against C&S would have expired on June 21, 2013, more than a year before this action was filed. Accordingly, the court finds that Mr. Liew's claims, and the claims of others similarly situated, are time-barred and must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part as follows: (1) All class claims asserted by the three named plaintiffs are dismissed; (2) The individual claims by Ms. Atwood and Mr. Liew are dismissed; and (3) Mr. Kayani has stated plausible individual claims. Counsel for the remaining parties are directed to confer and submit a joint status report by April 14, 2017, advising the court how they wish to proceed with the litigation.

**SO ORDERED.**

Dated:    April 6, 2017
          Brooklyn, New York

                        _____/s/_____
                          Kiyo A. Matsumoto
                          United States District Judge